IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:23-cr-137 |
| ) | |
| JOHN GIBSON ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

The government files this response in opposition to defendant John Gibson's motion for downward departure and downward variance (ECF No. 23).

### I. PROCEDURAL HISTORY AND PRESENTENCE REPORT

On November 8, 2023, the defendant pled guilty to a single count Criminal Information, charging the defendant with Conspiracy to Convert Trade Secrets, in violation of 18 U.S.C. § 1832(a)(5). The maximum penalty for this offense is 10 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 mandatory special assessment. The Court has scheduled sentencing for September 25, 2024. The Presentence Investigation Report ("PSR") reflects that the defendant's applicable Guidelines range is 46 to 57 months' imprisonment, based on an adjusted offense level of 23 and a criminal history category of I. *See* ECF No. 18 ("PSR") ¶¶ 63-64.

Defendant Gibson filed a motion for downward departure under §§ 2B1.1 App. N. 21(C) and 5C1.1 App. N. 10(B) and a motion for downward variance based on the 18 U.S.C. § 3553(a) factors.

**II.     Legal Standard**

    *a. Downward Departures*

Under the Sentencing Guidelines, a district court must ordinarily impose sentences within the range specified by the applicable guideline." *United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir.1996). "Each guideline attempts to anticipate a broad range of typical cases—a 'heartland'—that is representative of the circumstances and consequences of ordinary crimes of the type to which the guideline applies." *Id.* "Only if the district court determines that the circumstances and consequences of a case are 'atypical' or 'unusual' and, therefore, that the case does not fall within the guideline's heartland may it ... depart from the specified sentencing range." *Id.*

"To determine whether a circumstance or consequence is 'atypical' or 'unusual,' and, therefore, capable of taking a case out of the applicable guideline's heartland, district courts should consider not only the Guidelines themselves, but also the Sentencing Commission's policy statements and official commentary." *Id.* "'Encouraged' factors are usually appropriate bases for departure." *Id.* at 757–58 (citations omitted).

    *b. Downward Variances*

During sentencing, federal courts must follow a multistep process that analyzes both procedural and substantive concerns. *First*, the Court must correctly calculate the applicable guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). *Second*, the Court "must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). To the extent the Court deems some deviation from the guidelines range appropriate, the Court must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365

(internal quotation marks omitted). In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a). *See id.* at 364.

### III. Gibson fails to establish grounds for the requested downward departure.

Relying on U.S.S.G. § 2B1.1 App. N. 21(C), governing departure where the guidelines "substantially overstates the seriousness of the offense," and § 5C1.1 App. N. 10(B), governing departures for zero-point offenders where the offense of conviction was not a "crime of violence or otherwise serious offense," Gibson argues that the guidelines overstate the seriousness of his offenses. For the reasons stated below, the Court should reject Gibson's motion for a downward departure.

*a. Gibson's crimes caused serious harm and collateral impacts.*

To begin, the Court must look at the seriousness of Gibson's offenses in the context of Gibson's role in the criminal scheme. Gibson was a senior corporate executive. By virtue of his position, Gibson knew the value and the importance of the confidential information to Company 1. Statement of Facts ("SOF") ¶ 22(e). After receiving the information, Gibson "strategically disseminated such GE and MHI Confidential information to others within COMPANY 1, including other senior executives," and such dissemination was "calculated to (1) provide COMPANY 1 with a competitive advantage in the bid for the Dominion Peaker Project, to the detriment of GE and MHI; (2) improve COMPANY 1's business intelligence; and (3) provide COMPANY 1 with a competitive advantage in future bids against GE and MHI, to the detriment of GE and MHI." *Id.* ¶ 22(f). To be sure, Gibson correctly notes that he did not have the power to approve the illicit rebid unilaterally within the multi-layered corporate organization of Company 1. But the rebid would not have been approved *without* Gibson's formal approval, and Gibson also played an active role in convincing others (including senior leaders) within Company 1 to approve the rebid. *See id.* ¶ 22(g) (Gibson used the improperly obtained

3

confidential information to "authorize[] and obtain[] approvals within COMPANY 1 that authorize[] COMPANY 1 to submit a lower bid to Dominion."). Few corporate actors operate in a vacuum. The Court must hold corporate actors responsible even when their criminal acts take form within a broader corporate hierarchy, as most corporate actors' actions do. The mere fact that Gibson was not the only link in the approval chain is not mitigation with respect to his actions.

      b. *The 2020 postponement of the Dominion project is no basis for a downward departure.*

Next, Gibson references the fact that Dominion postponed the project in August 2020 to argue that his crimes were not serious. Dominion first learned of this misconduct on June 16, 2020. Two months later, on August 14, 2020 Dominion terminated the contract with Company 1. Dominion has stated that the rationale for the termination had nothing to do with the misconduct at issue in this criminal case.[1] Yet, Dominion still needed this power plant, since they reissued a request for proposal the project just a few years later, effectively just postponing it and opening a new bidding process.[2] Company 1 did not bid on this subsequent request for proposal. Even if Gibson's crimes were not the cause of the Dominion peaker project being derailed in 2020, he cannot claim postponement of the project as mitigation for his crimes. The postponement of the project in 2020 occurred more than a year after Gibson completed his crimes and, at best, had

---

[1] Courtney Mabeus-Brown, Former [Company 1] exec charged in Dominion bid-rigging case, Virginia Business (October 27, 2023) ("Aaron Ruby, a spokesperson for the Richmond-based Fortune 500 utility, told Virginia Business that the conspiracy case was not connected to the plant's cancelation.").

[2] Charlie Paullin, Dominion reviving plans to build a natural gas peaker plant in Chesterfield, Virginia Mercury (June 14, 2023), available at https://virginiamercury.com/2023/06/14/dominion-reviving-plans-to-build-a-natural-gas-peaker-plant-in-chesterfield/

nothing to do with any meritorious deed that Gibson performed. Accordingly, Gibson should not reap any benefit from such intervening events.

        c. *Gibson's subjective belief that GE had Company 1's confidential information is no basis for a downward departure.*

So too should Gibson not receive any mitigation credit for any subjective belief that GE had confidential information of Company 1. Such subjective belief, even if true, is no justification for Gibson's criminal misconduct. Though the government has seen no evidence of criminal violations of GE, even if Gibson's subjective belief was true, it does not undermine the seriousness of his offenses. To the contrary, misconduct by multiple industry actors reinforces the need for general deterrence and serious punishment – and this is done by imposing harsh penalties on individuals caught cheating and stealing to subvert bidding processes.

**IV.** **Gibson fails to establish grounds for downward variance.**

The government reiterates that the sentencing factors call for a top end of Guideline sentence, rather than a downward variance. The government incorporates by reference the arguments from its sentencing memorandum (ECF No. 22).

Gibson argues that the Court should consider cooperation with the government's investigation as part of a downward variance. ECF No. 23 at 21. Doing so would be improper at this stage. *See* U.S.S.G. Section 5K1.1 ("*Upon motion of the Government*, a defendant who has provided substantial assistance in the investigation or prosecution of another person who has committed an offense may be sentenced to a term of supervised release that is less than any minimum required by statute or the guidelines.") (emphasis added).

## V.     CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny the defense motions and impose top-end of Guidelines sentence, which is sufficient but no greater than necessary to satisfy the purpose of sentencing set forth in 18 U.S.C. § 3553.

JESSICA D. ABER
UNITED STATES ATTORNEY

By:     /s/
Avi Panth
Virginia Bar No. 92450
Kenneth R. Simon, Jr.
Virginia Bar No. 87998
Assistant United States Attorneys
United States Attorney's Office
919 E. Main Street, Suite 1900
Richmond, Virginia 23219
Office Number: (804) 819-5400
Fax Number: (804) 771-2316
E-Mail: Avishek.Panth@usdoj.gov
E-Mail: Kenneth.Simon2@usdoj.gov