IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:23-cr-137 (DJN) |
| v. ) | |
| ) | |
| JOHN GIBSON, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

John Gibson, through counsel, files this response to the government's sentencing memorandum (Dkt. No. 22). In that filing, the government asks the Court to impose a sentence at the top of the guidelines range of 46 to 57 months. For the reasons set forth herein along with his opening brief and to be presented at the sentencing hearing, Mr. Gibson asks the Court to deny the government's request for a sentence at the top of the guidelines range and instead impose a below-guidelines sentence. A sentence below the guidelines is sufficient but not greater than necessary to meet the purposes of 18 U.S.C. § 3553(a). It takes into account Mr. Gibson's role—his real role—in the offense, his level of culpability relative to that of his co-defendants, and the need to avoid unwarranted sentencing disparities.

## ARGUMENT

Mr. Gibson's Role in the Offense

Just as in the Criminal Information and Statement of Facts, the government's sentencing memo creates the impression that Mr. Gibson was a high-level force behind a scheme to defraud competitor General Electric Company ("GE"). While the plea documents are not inaccurate per se, they fail to present the full picture of Mr. Gibson's role.

The Court likely understands, as the government does, Mr. Gibson's placement in the decision structure. He occupied a position on the lowest of three tiers in Siemens Energy Group's ("Siemens") Limits of Authority ("LoA") matrix. As such, he was one of *11 individuals* who had to approve Siemens's price reduction. While the government acknowledges in its sentencing memo two other Siemens employees involved in the offense, Michael Hillen ("Hillen") and Mehran Sharifi ("Sharifi"), it fails to mention the 10 other individuals at or above Mr. Gibson's level who also received and used confidential information about GE's revised bid. The materials submitted for the Court's consideration include evidence demonstrating the distribution of that information to four others at or above his level along with its use by three of them, including the company's CEO for Power Generation—the Business Unit's Technical lead, identified in the Criminal Information and Statement of Facts as Co-Conspirator ("CC")-4. The positions those four individuals held are highlighted below.

| | Level | Approval Column | | | |
|---|---|---|---|---|---|
| | | Technical | Financial | Legal | Project Execution |
| High | OpCo/Division | ✓ | ✓ | ✓ | |
| | Business Unit | ✓ | ✓ | ✓ | ✓ |
| Low | Business Segment | John Gibson | ✓ | ✓ | ✓ |

*See* Defendant's Position on Sentencing and Motion for a Downward Departure and Variance ("Def. Sentencing Memo") (Dkt. No. 23), Exhibits ("Ex.") 3, 5 (Sealed). It is also important to note that it was not Mr. Gibson who obtained approval from top-level executives in the LoA grid, as the government indicates in its sentencing memo. Rather, it was the Business Unit's Technical lead (CC-4) who sought that approval. *See* Def. Sentencing Memo, Ex. 5 (Sealed).

Mr. Gibson is the only one in Siemens management that has stood up and accepted responsibility for their actions. He does not bring his position within the decision hierarchy to

the Court's attention to suggest the government's failure to charge anyone else at or above his level, in and of itself, justifies a below-guidelines sentence, but rather to put his role into the proper context. It was Mr. Gibson's job to consider competitive information in determining whether to approve and elevate to the next level a decision like the repricing of a bid. And this is what he did. That said, it was also his job to distinguish competitive information obtained legally from that acquired through unlawful means and to not use the latter. He did not do that here, and he fully accepts responsibility for that.

In short, Mr. Gibson did not lead, he did not direct, and he did not devise.

Three other features of Mr. Gibson's involvement and the context in which the offense conduct took place support a below-guidelines sentence.

First, as the government acknowledges, Mr. Gibson did not financially benefit from his role in the offense, even if his stature within the company may have been enhanced marginally as a result. Contrast that to the mastermind of an extensive $65 million fraud scheme who lives in mansions, sails yachts, and sips champagne while flying on private jets to private islands—in other words, who is motivated by greed at the expense of others. That is not John Gibson. The Dominion Energy Inc. ("Dominion") rebid occupied only a few hours of his attention over the course of a week and led to no personal financial benefit. Nonetheless, the guidelines are treating him the same as one criminal who personally schemed innocent people out of as much as $65 million.

Second, the size of the transaction in relation to the scope of Mr. Gibson's conduct supports a below-guidelines sentence. Mr. Gibson should not be disproportionately punished because of the industry in which he worked. The power generation equipment market is unique. Siemens and GE—and Mitsubishi Heavy Industries, Ltd. ("Mitsubishi")—are massive,

3

multinational corporations with huge bureaucracies. To provide some perspective, GE's total employee headcount ranges from 125,000 to 168,000. Siemens, the largest industrial manufacturing company in Europe, has about 320,000 employees. GE's current market cap is approximately $180 billion. The current market cap of Siemens (Siemens and Siemens Energy combined) is about $165 billion. The Dominion project was about a single transaction—one that happened to involve very expensive equipment. As a result, the product cost impact on the guidelines (a 22-level enhancement) is plainly out of sync with his role in the offense. For example, a sales executive competing for a coffee service contract for Dominion's corporate offices who uses misappropriated confidential competitor information to win the contract award—essentially the same conduct—would be looking at a fraction of the time recommended by the guidelines in this case.

Third, the reality is that the use of competitors' confidential information in the power generation industry is not uncommon. To be clear, this does not make it right. But it is not unusual. Customers have a direct incentive to get the best price. There are few better ways of achieving that than by playing one bidder off another. While GE's reciprocal conduct was not part of the government's investigation, as reflected in his May 25, 2019 email to the Business Segment's Financial lead, it was clearly Mr. Gibson's belief that Siemens's confidential bid information had been leaked to GE. Indeed, it is hard to imagine any other explanation for GE's spontaneous price reduction. While general deterrence may be a valid consideration in fashioning a sentence, it is important for the Court to understand that Mr. Gibson is not some sort of unhinged outlier whose specific conduct supports an unusually lengthy prison term.

Mr. Gibson's Level of Culpability

      The government takes the position that because of his standing within Siemens, Mr. Gibson deserves a meaningfully higher sentence than Hillen and Dominion's Theodore Fasca ("Fasca"), each of whom this Court has sentenced to 37 months imprisonment, and Sharifi, who has yet to be sentenced. The government points to his "instrumental" role in getting Siemens's rebid approved. The reality, however, is that each of the charged defendants had an "instrumental" role as did the 10 others at or above Mr. Gibson's level on the LoA grid. This offense could not have happened if Fasca had not shared competitors' confidential bids with Hillen. It could not have happened if Hillen had not in turn shared them with Sharifi. It could not have happened if Sharifi had not brought a one-line summary of GE's price reduction to Mr. Gibson's attention. It could not have happened if the Business Unit's Technical lead (CC-4) had not shared it with the ultimate decision makers at the top of the LoA approval grid.[1] And it could not have happened if 10 people at or above his approval level had not reviewed that information and greenlighted Siemens's own price reduction. Everyone was "instrumental" as Siemens would not have submitted the rebid if each had not done their part. In that way, Mr. Gibson is no different than the others. He was one spoke in a very large wheel.

      In one important respect, however, Mr. Gibson is in fact markedly different from Hillen and Fasca. Those two individuals plotted a scheme to steal GE and Mitsubishi's confidential bid information for Siemens's benefit. Fasca provided voluminous and detailed information to Hillen. In an effort to conceal the transfer of that information, they used private email accounts, including that of Hillen's wife. By contrast, the confidential information that made its way to

---

[1] As noted above, the government is mistaken in its assertion that Mr. Gibson obtained approvals from Siemens's parent company to submit a revised offer based on the improperly obtained confidential information. The Business Unit's Technical lead (CC-4) obtained that approval. *See* Def. Sentencing Memo, Ex. 5 (Sealed).

Mr. Gibson (Def. Sentencing Memo, Ex. 2), and that he in turn forwarded, was a one-line summary disclosing the percentage by which GE had lowered its bid. Mr. Gibson communicated with others about the revised bid and Siemens's potential response using his company email account and typically copying multiple colleagues. He made no effort to conceal his communications within the company. It was all out in the open. Unlike Hillen and Fasca, he did not plot, conceal, or generally take any unusual procedural steps.

The analysis should focus on conduct—the role in the offense—and not merely rank. The facts and circumstances surrounding Mr. Gibson's conduct in relation to both charged and uncharged coconspirators support a sentence below the guidelines.

<u>Avoidance of Unwarranted Disparities</u>

As the Court is aware, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" is a central statutory sentencing factor under 18 U.S.C. §3553(a). Courts across the country have sentenced defendants convicted of the same offense, conversion of trade secrets in violation of 18 U.S.C. § 1832, to terms of imprisonment far less than the high end of the guidelines the government is suggesting. Many defendants received sentences of straight probation, and only a small percentage were sentenced to more than one year and a day. Most did not accept responsibility and went to trial. Those cases are summarized below.

| **Reported Sentences of One Year and a Day or Less** | | | | |
|---|---|---|---|---|
| **Case** | **Date** | **District** | **Sentence** | **Notes** |
| U.S. v. Olgado | June 2022 | N.D. Cal. | Probation | - Trial conviction |
| U.S. v. Yu Xue | September 2020 | E.D. Pa. | (1) 8 months<br>(2) 59 days<br>(3) Probation<br>(4) Probation | - Multiple defendants<br>- Guilty pleas<br>- $550 million loss<br>- Theft of biopharma technology |

6

| Case | Date | District | Sentence | Notes |
|---|---|---|---|---|
| U.S. v. Lam | July 2020 | N.D. Cal. | (1) 6 months<br>(2) 6 months<br>(3) Probation | - Multiple defendants<br>- Guilty pleas<br>- Theft of biopharma technology |
| U.S. v. Xiaolang Zhang | December 2019 | N.D. Cal. | 120 days | - Guilty plea |
| U.S. v. Nosal | December 2016 | N.D. Cal. | 1 year and a day | - Trial conviction |
| U.S. v. Sing | January 2016 | C.D. Cal. | 1 year and a day | - Trial conviction<br>- Involved industrial turbine products |
| U.S. v. Zhang | February 2014 | N.D. Cal. | 3 months | - Trial conviction |
| U.S. v. Ward | January 2013 | E.D. Wash. | Time served | - Trial conviction<br>- Involved defense aviation technology |
| U.S. v. Roberts | November 2009 | E.D. Tenn. | (1) Probation<br>(2) Probation | - Multiple defendants<br>- Trial conviction |
| U.S. v. Yang | August 2005 | N.D. Ohio | (1) Probation (with 6 months home confinement)<br>(2) Probation | - Multiple defendants<br>- Trial convictions |
| **Reported Cases of More Than One Year and a Day** | | | | |
| Case | Date | District | Sentence | Notes |
| U.S. v. Shi | March 2021 | D.C. | 16 months | - Trial verdict |
| U.S. v. Isler | December 2020 | | 42 months | - Guilty plea<br>- Defendant had criminal history and issues on pretrial release, repeatedly lied to FBI, and minimized culpability at sentencing |
| U.S. v. Pu | February 2016 | N.D. Ill. | 18 months | - Guilty plea<br>- Obstruction enhancement |
| U.S. v. Shanshan Du | June 2014 | E.D. Mich. | (1) 3 years<br>(2) 1 year and a day | - Multiple defendants<br>- Trial conviction |

7

| Unreported Case of More Than One Year and a Day | | | | |
|---|---|---|---|---|
| **Name** | **Date** | **District** | **Sentence** | **Notes** |
| U.S. v. Mitchell | March 2010 | E.D.Va. | 18 months | - Guilty plea<br>- Stole business trade secrets from DuPont and provided them to Kolon Industries<br>- Guidelines were 30 to 37 months, including an obstruction enhancement |

The purpose of the sentencing guidelines is to promote uniformity in sentencing not just with respect to co-defendants but, more broadly, throughout the country. Such uniformity is one of three congressional objectives behind the creation of the U.S. Sentencing Commission. "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." United States Sentencing Guidelines Manual, Ch. 1, Part A (Introduction and Authority). These cases (many of which involve factors that tend to *enhance* sentence length, including the failure to accept responsibility and obstruction) establish a clear record of lower sentences than the high end of the 46 to 57 month range the government is requesting.

Accordingly, a below-guidelines sentence is necessary to avoid unwarranted sentencing disparities in these cases involving similar conduct.

## CONCLUSION

For the reasons set forth above, those outlined in the opening brief, and those to be presented at the sentencing hearing, Mr. Gibson respectfully asks the Court to reject the

government's request for a sentence at the top of the guidelines and instead to impose a sentence below the applicable guidelines range of 46 to 57 months in prison.

                Respectfully submitted,

By:      /s/                 
Timothy D. Belevetz
VSB No. 36110
Ice Miller LLP
200 Massachusetts Avenue, N.W., Suite 400
Washington, DC  20001
Tel: (202) 572-1605
timothy.belevetz@icemiller.com

*Counsel for Defendant John Gibson*

9

## **CERTIFICATE OF SERVICE**

       I certify that on this 11th day of September 2024, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which sends a notification of such filing to:

Avishek Panth
Kenneth Simon
Assistant U.S. Attorneys
U.S. Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA  23219
Tel:  (804) 819-5400
avishek.panth@usdoj.gov
kenneth.simon2@usdoj.gov

*Counsel for the United States*

                                                /s/
                                    Timothy D. Belevetz
                                    Ice Miller LLP
                                    200 Massachusetts Avenue, N.W., Suite 400
                                    Washington, DC  20001
                                    Tel: (202) 572-1605
                                    timothy.belevetz@icemiller.com