IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:23-cr-137 (DJN) |
| v. ) | |
| ) | |
| JOHN GIBSON, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN
OPPOSITION TO MOTION FOR DOWNWARD DEPARTURE AND VARIANCE**

John Gibson, through counsel, files this reply to the government's Response in Opposition to Defense Motion for Downward Departure and Downward Variance (Dkt. No. 27).

Mr. Gibson's argument is simple. The enormous loss amount rockets him into a sentencing guidelines range disproportionate to his conduct. In support of his motion for a below-guidelines sentence, one that is more in sync with his role and the full context of this particular case, Mr. Gibson is asking the Court to take into account a range of factors, including his history, characteristics, role in the offense, and response to prosecution. To that end, several of the points he has made and the government's response thereto warrant clarification and expansion.

As an initial matter, Mr. Gibson recognizes that as a sales executive who took part in approving, and then elevating for higher-level approval, Siemens Energy Group's ("Siemens") rebid, he was a substantial participant in the effort that led to a bid reduction through the use of illegally obtained information about competitor General Electric Company's ("GE") bid. He also recognizes this is a serious offense. But it is vital to put his conduct into context.

Mr. Gibson did not plot the theft of GE's (or Mitsubishi's) confidential bid information. He received it unsolicited. And what he received was not the detailed information Dominion Energy Inc.'s ("Dominion") Theodore Fasca had misappropriated and shared with Michael Hillen ("Hillen"), who in turn shared it with Mehran Sharifi ("Sharifi"). It was a single-line summary. Mr. Gibson considered the information—along with an internally-generated analysis of it—in approving Sharifi and Hillen's proposal to drop the company's bid and then elevating the issue for approval by more senior officials. He did this openly using his Siemens email account, copying others, and as part of formal, established decision approval procedures.

The fact that no fewer than ten other Siemens executives at or above his level in the Limits of Authority ("LoA") grid also approved the bid reduction helps put Mr. Gibson's conduct into context. To be sure, it does not absolve him from liability, but it demonstrates he was in fact one spoke in a very large wheel. Mr. Gibson's role in approving the Dominion project rebid was no different than that of any of the others in the company's LoA structure (except that most of the others were higher than him in the corporate hierarchy).[1] What the government describes as his "active role in convincing others" to authorize a price reduction was nothing more than the steps he and others within the LoA grid were required to follow.

Why is this important? And why is that fact that Mr. Gibson did not devise or direct the scheme or financially benefit from it important? It is for the same reason his devotion of so little time to the matter (a few hours over the course of a week) is important. These factors distinguish him from the sole schemer who devises and executes a fraud yielding up to $65 million that goes directly into their pocket. Both scenarios take you to the same place in the guidelines but are palpably different.

---

[1] The significance of Mr. Gibson's role as one of many necessary approvers might be different if he was at the top of the corporate hierarchy, but he was not. He was in the lowest of three approval tiers.

2

Other reported sentences for the same offense under 18 U.S.C. § 1832 further support the appropriateness of a below-guidelines sentence. Defendant's Response to Government's Sentencing Memorandum (Dkt. No. 28) demonstrates the significantly lower sentences judges in other districts have imposed in these types of cases, including many instances where the defendant did not accept responsibility and was convicted by way of a trial verdict.

It is also crucial to take into account the eventual outcome of the proposed project and the size of the competitors. Dominion cancelled the deal in 2020 for reasons unrelated to this offense. The government points out that Dominion later revived the project (which involved a different type of fuel), asserting postponement of the project does not support a conclusion that Mr. Gibson's crimes were not serious. To be clear, Mr. Gibson recognizes the illegal use of a competitor's confidential bid information is a serious offense and that he should be held accountable. He also understands the sentencing guidelines treat intended loss the same as actual loss. However, the reality that, at the end of the day, Siemens did not profit and GE was not deprived of revenue it otherwise may have received is relevant to the impact of the offense and Mr. Gibson's role in it. There was no actual financial harm to GE. No one lost their life savings.[2]

Furthermore, even if the deal had gone forward, Siemens's profit and the loss to GE would not have been substantial considering the size of these companies. In fact, Siemens would not have even profited from the project. The company's rationale for the deal was to help cover certain fixed manufacturing costs related to its inability to take large plants offline during periods of decreased output. The deal was far from a make-or-break situation for either company.

---

[2] That said, Mr. Gibson also acknowledges the more generalized harm to the integrity of the market that can result from this type of offense.

Finally, the government misconstrues the relevance at this stage of Mr. Gibson's cooperation in the ongoing investigation. Mr. Gibson realizes the government has not moved for a downward departure based on substantial assistance and that the Court is not entertaining a departure on those grounds. Mr. Gibson's immediate acceptance of responsibility and extensive cooperation is relevant to his response to prosecution. The Court has stated that, in effect, the measure of a person's character is not the mistakes they have made but rather what they do after making those mistakes.

Mr. Gibson broke the law. He accepts responsibility, wants to make amends, and even understands a term of incarceration is warranted. It is simply not the length of time set forth in the guidelines range let alone the high end the government is seeking. A below-guidelines sentence is appropriate.

Respectfully submitted,

By: \_\_\_\_\_/s/_____
Timothy D. Belevetz
VSB No. 36110
Ice Miller LLP
200 Massachusetts Avenue, N.W., Suite 400
Washington, DC 20001
Tel: (202) 572-1605
timothy.belevetz@icemiller.com

*Counsel for Defendant John Gibson*

## **CERTIFICATE OF SERVICE**

       I certify that on this 13th day of September 2024, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which sends a notification of such filing to:

Avishek Panth
Kenneth Simon
Assistant U.S. Attorneys
U.S. Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA  23219
Tel:  (804) 819-5400
avishek.panth@usdoj.gov
kenneth.simon2@usdoj.gov

*Counsel for the United States*

                                      /s/
                             Timothy D. Belevetz
                             Ice Miller LLP
                             200 Massachusetts Avenue, N.W., Suite 400
                             Washington, DC  20001
                             Tel: (202) 572-1605
                             timothy.belevetz@icemiller.com